**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SUNSTONE INFORMATION DEFENSE, INC., <br><br>                 Plaintiff, <br>     v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION <br><br>             Defendant. | CIVIL ACTION NO. 6:20-cv-01033-ADA |

**PLAINTIFF'S MOTION TO STRIKE AND EXCLUDE IMPROPER**
**OPINIONS OF DEFENDANT'S INVALIDITY EXPERT, DR. STRIEGEL**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................................1

II.   LEGAL STANDARDS ........................................................................................................3

    A.    *Daubert* Standards ................................................................................................3

    B.    Claim Construction ...............................................................................................5

    C.    Written Description................................................................................................5

    D.    Enablement ............................................................................................................6

III.  ARGUMENT .......................................................................................................................7

    A.    Dr. Striegel's Invalidity Opinions Premised On "Sunstone's Interpretation
        Of The Claims" Should Be Excluded As Inconsistent With The Court's
        Claim Construction ................................................................................................7

    B.    Dr. Striegel's Invalidity Opinions Premised On "Sunstone's Interpretation
        Of The Claims" Should Be Excluded As Inconsistent With The Plain And
        Ordinary Meaning Of The Claims .......................................................................12

    C.    Dr. Striegel's Opinions That The Asserted Patents Do Not Meet The Written
        Description And Enablement Standards Are Unreliable And Should Be
        Stricken ................................................................................................................13

    D.    Dr. Striegel's Opinions Regarding Background Prior Art Are Irrelevant
        And Should Be Stricken........................................................................................15

IV.   CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

*Alcon Research Ltd. v. Barr Lab'ys, Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014) ....................................................................6, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .............................................................................. *passim*

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997) ......................................................................................3

*In re Gay*, 309 F.2d 769
  (CCPA 1962) .................................................................................................6

*Inline Connection Corp. v. Earthlink, Inc.*,
  684 F.Supp.2d 496 (D. Del. 2010) ...............................................................14

*Invitrogen Corp. v. Clontech Lab'ys.*,
  429 F.3d 1052 (Fed. Cir. 2005) ......................................................................7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ......................................................................................3

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  959 F.3d 1091 (Fed. Cir. 2020) ...............................................................7, 13

*Minerals Separation Ltd. v. Hyde*,
  242 U.S. 261 (1916) ................................................................................6, 13

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003) ...............................................................5, 14

*More, JC, Inc. v. Nutone Inc.*,
  2007 WL 4754173, (W.D. Tex. 2007) ............................................................4

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
  No. 6:11-cv-492, 2017 WL 4020591, (E.D. Tex. 2017) ...................................5

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
  21 F.4th 1362 (Fed. Cir. 2022) ......................................................................6

*Personalized Medai Commc'ns, LLC v. Apple, Inc.*,
  No. 2:15-CV-01366-JRG, 2021 WL 467592, (E.D. Tex. 2021) ....................5, 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ....................................................................12

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
    200 F.3d 358 (5th Cir. 2000) ........................................................................4, 5

*Spectra-Physics, Inc. v. Coherent, Inc.*,
    827 F.2d 1524 (Fed. Cir. 1987) ........................................................................6

*Tyco Healthcare Grp. LP v. Biolitec, Inc.*,
    No. C-08-3129 MMC, 2010 WL 3059694, (N.D. Cal. Aug. 3, 2010) ...........................14

*United States v. Hicks*,
    389 F.3d 514 (5th Cir. 2004) ........................................................................4

*Vas-Cath, Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991) ...................................................................6, 14

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ........................................................................4

*Whirlpool Corp. v. TST Water, LLC*,
    2018 WL 1536875 (E.D. Tex. Mar. 29, 2018) ....................................................12

## STATUTES

Federal Rule of Evidence 702 ........................................................................3, 5

Federal Rule of Evidence Rule 403 ....................................................................4

35 U.S.C. § 112 ...................................................................................1, 2, 6

## OTHER AUTHORITIES

Manual of Patent Examining Procedure § 2164.08 ......................................................6

Plaintiff SunStone Information Defense, Inc. ("Plaintiff" or "SunStone") respectfully moves the Court to strike and exclude from trial certain opinions expressed in the invalidity report of Defendant International Business Machines Corporation's ("Defendant" or "IBM") technical expert, Dr. Aaron Striegel ("Striegel").

## I.   INTRODUCTION

SunStone asserts that IBM infringes certain claims of U.S. Patent Nos. 9,122,870 (the "'870 Patent") and 10,958,682 (the "'682 Patent") (collectively, "Asserted Patents"). On December 22, 2021, IBM's invalidity expert, Dr. Striegel, submitted the Expert Report of Dr. Aaron Striegel on Invalidity ("Invalidity Report," attached as Exhibit A). That report, however, is deficient and defective in numerous ways. This motion seeks to strike and exclude from trial those portions (and related opinions) that are deficient and defective pursuant to *Daubert v. Merrill Dow Pharmas.*, 509 U.S. 579, 589 (1993) and related authority governing the admissibility of expert opinions.

Dr. Striegel offers numerous categories of opinions that are inadmissible and should be stricken and excluded:

- Opinions that do not follow the Court's Claim Construction Order (Dkt. 32);

- Opinions that do not apply the plain and ordinary meaning of terms that were not construed by the Court;

- Opinions regarding purported failure to meet the enablement and written description requirement of 35 U.S.C. § 112 because the Asserted Patents do not explicitly recite IBM's implementation of the accused features;

- Opinions that "background" prior art references for which Dr. Striegel did not provide an analysis (and some of which IBM never provided invalidity contentions) disclose limitations of the Asserted Patents.

As detailed further below, Dr. Striegel's opinions are unreliable because, *inter alia*, he bases his analysis on claim constructions that differ from the constructions provided by the Court in its Claim Construction Order (Dkt. 32). In addition, for the majority of invalidity references (anticipation and obviousness) advanced by Dr. Striegel, instead of applying the plain and ordinary meaning of claim terms as would be understood by a person of ordinary skill in the art ("POSA"), he relies on purported (but undisclosed) constructions that he divined from SunStone's infringement contentions. He refers to these as "under SunStone's interpretation of the claims" but does not disclose his opinion of those constructions. Dr. Striegel's lack of explanation and blanket reference to "SunStone's interpretation of the claim" not only will not help a finder of fact, but will confuse the jury's analysis of the prior art references.

Dr. Streigel's invalidity opinions are further unreliable because he incorrectly applies both the written description and enablement standards and conflates the test for determining these requirements under 35 U.S.C. § 112. Specifically, Dr. Striegel's methodology is improperly centered upon analyzing the patents for explicit disclosures of the implementation of the accused features of Defendant's infringing product.

Finally, certain of Dr. Striegel's invalidity opinions are irrelevant and unreliable because they relate to prior art references that are not the basis for anticipation or obviousness contentions. Defendant did not provide any invalidity claim charts for most of these "background" prior art references as part of its invalidity contentions nor does Dr. Striegel use these references as part of any opinion on anticipation or obviousness.

For these reasons, Plaintiff respectfully requests that the Court strike the following paragraphs of the Invalidity Report and exclude the opinions expressed therein from trial: ¶¶ 97-104 (previously undisclosed invalidity contentions); 126-139 (previously undisclosed invalidity contentions); 144-170 (previously undisclosed invalidity contentions); 467-551 (application of incorrect claim construction); 564-576 (application of incorrect claim construction); 589-732 (application of incorrect claim construction); 1039-1192 (application of incorrect claim construction); 1195-1357 (application of incorrect claim construction); and 1358-1369 (improper enablement and written description analysis).

## II.   LEGAL STANDARDS

### A.   *Daubert* Standards

Federal Rule of Evidence 702, as amended in light of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 591-92 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), provides that an expert may give opinion testimony if (1) the opinion is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Supreme Court in *Daubert* charged trial courts with a "gatekeeping" task: determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 597.

For expert evidence to be "reliable," there must be an adequate "fit" between the offered evidence and the subject matter at issue in the case. *Daubert*, 509 U.S. at 591. In *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), the Supreme Court affirmed exclusion of expert testimony and clarified that the district court's gatekeeping role is not limited to an evaluation of the reliability of the methods used by an expert, but also extends to a review of the strength of the connection between an expert's conclusion and the facts on which that conclusion is based. The Court

3

observed that "[t]rained experts commonly extrapolate from existing data. But nothing  in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 146. As a result, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," and in such cases the expert's testimony is unreliable and should be excluded, as it was in that case. *Id.*

Finally, Rule 403 of the Federal Rules of Evidence also guides the analysis. Under Rule 403, evidence that is relevant may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

Applying these rules to patent cases, the Federal Circuit has emphasized the need for expert testimony to be closely tied to both the patent claims at issue and the facts of the case. *E.g., VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328-29 (Fed. Cir. 2014) (holding that "the district court should have exercised its gatekeeping authority" to exclude plaintiff's expert because he did not "carefully tie proof of damages to the claimed invention's footprint in the market place").

The party offering the expert bears the burden of showing admissibility.  *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). "The district court's chief role when determining the admissibility of expert testimony under *Daubert* is that of a 'gate-keeper.'" *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371-72 (5th Cir. 2000). This Court has held that "expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable." *More, JC, Inc. v. Nutone Inc.*, 2007 WL 4754173, at *3 (W.D. Tex. 2007).

In interpreting Rule 702, the Supreme Court in *Daubert* charged trial courts with

determining whether scientific expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrill Dow Pharmas.*, 509 U.S. 579, 589 (1993). As a threshold inquiry into admissibility, any expert testimony offered or introduced by a party must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

"As such, the district court makes a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue.'" *Seatrax*, 200 F.3d at 371-72.

### B.    Claim Construction

In delivering an invalidity opinion, an expert must rely on the claim construction given by the Court if one was given. *Personalized Medai Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG, 2021 WL 467592, at *2-3 (E.D. Tex. 2021) (granting a *Daubert* motion to exclude expert testimony when the expert did not use the Court's claim construction).  Any portions of an expert report in contravention of the Court's final claim construction must be stricken. *Id.* at *3. No party may contradict the Court's claim construction to a jury. *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492, 2017 WL 4020591, at *3 (E.D. Tex. 2017) (granting a *Daubert* motion to exclude expert testimony that would confuse the jury because of a failure to follow the Court's exact claim construction).

### C.    Written Description

The written description requirement is used to ensure the inventor had possession as of the filing date of the claimed subject matter.

> To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention.

*Moba, B.V. v. Diamond Automation, Inc*., 325 F.3d 1306, 1319 (Fed. Cir. 2003); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

The written description portion of 35 U.S.C. § 112(a) does not require the phraseology of a claim limitation be found word-for-word in the specification; rather, the support in the specification may be express, implicit, or even inherent. *Novartis Pharms. Corp. v. Accord Healthcare, Inc*., 21 F.4th 1362, 1374 (Fed. Cir. 2022). Importantly, there is no *in haec verba* requirement. *See id.* "The fundamental factual inquiry is whether the specification conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, applicant was in possession of the invention as now claimed." *Vas-Cath, Inc*., 935 F.2d at 1563-64. To make a determination of whether there is sufficient written description, the Court must view the language of the patent and not external products. *See Alcon Research Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1191-92 (Fed. Cir. 2014).

### D.    Enablement

The Supreme Court set forth the standard for the enablement requirement as whether the specification describes how to practice the invention without undue or unreasonable experimentation. *Minerals Separation Ltd. v. Hyde*, 242 U.S. 261, 270 (1916). Accordingly, even though 35 U.S.C. § 112(a) does not use the term "undue experimentation," it has been interpreted to require that the claimed invention be disclosed in such a manner so that any person skilled in the art can make and use the invention without undue experimentation. *Id.* However, a patent need not teach, and preferably omits, what is well known in the art. *See e.g. Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1536 (Fed. Cir. 1987); *In re Gay*, 309 F.2d 769 (CCPA 1962).

When determining whether a patent meets the enablement requirement, "all questions of enablement are evaluated against ***the claimed subject matter***." M.P.E.P. § 2164.08 (highlighting that the focus of the "inquiry is whether everything within the scope of the claim is enabled") (emphasis added). Since the purpose of the enablement requirement is to meaningfully place the invention into the public domain and to disclose the invention in a way that will progress technical

6

arts, the enablement inquiry is directed to the claim language and specification of the patented invention. *Invitrogen Corp. v. Clontech Lab'ys.*, 429 F.3d 1052, 1070-71 (Fed. Cir. 2005). The enablement inquiry necessarily depends on the claims and is not focused on the potential enablement of content beyond what is within the patent. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020).

## III.   ARGUMENT

### A.   Dr. Striegel's Invalidity Opinions Premised On "Sunstone's Interpretation Of The Claims" Should Be Excluded As Inconsistent With The Court's Claim Construction

During the claim construction process the Court considered briefing and heard argument about numerous terms in the Asserted Patents. Thereafter, on July 22, 2021, the Court issued its Claim Construction Order (Dkt. 32) in which it found that six terms in the Asserted Patents should be construed to have their plain and ordinary meaning. (Dkt. 32 at 1-2.) Of course, it is axiomatic that an expert's invalidity opinions must be based on the claim constructions provided by the Court. *Personalized Medai Commc'ns, LLC,* 2021 WL 467592, at *2-3 (E.D. Tex. 2021).

Nevertheless, many of Dr. Striegel's invalidity opinions are based on something other than the Court's claim constructions. By way of example, with respect to the '870 Patent, Dr. Striegel advances nineteen separate invalidity positions. That is, Dr. Striegel advances invalidity positions based on nineteen different references and combinations. For thirteen of these, Dr. Striegel only provides opinions "under SunStone's interpretation of the claims" and ***not*** under the Court's constructions. To make matters worse, Dr. Striegel never discloses what he believes to be "Sunstone's interpretation of the claims." That Dr. Striegel willfully ignored the Court's claim constructions and applied his independently divined "SunStone's interpretation of the claims" is shown in convenient chart form at the end of his report on pages 396-397:

7

## XII.   SUMMARY OF OPINIONS

1389.   In my opinion, the asserted claims of the '870 and '682 patents are anticipated and/or rendered obvious by the prior art.

1390.   My opinions for the '870 patent are summarized as follows:

| Prior Art | Claims | Anticipation/Obviousness |
|---|---|---|
| Callanan | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Anticipation |
| O'Sullivan | 1, 2, 4, 7, 8, 10, 17, 18, 39, 43 | Anticipation |
| Willner | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Anticipation (under SunStone's interpretation of the claims) |
| Callanan | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness |
| Callanan/Novoselsky | 10 | Obviousness |
| Callanan/Song | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| Callanan/Ramabadran | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| O'Sullivan | 1, 2, 4, 7, 8, 10, 17, 18, 39, 43 | Obviousness |
| O'Sullivan/Novoselsky | 10 | Obviousness |
| O'Sullivan/Song | 1, 2, 4, 7, 8, 10, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| O'Sullivan/Ramabadran | 1, 2, 4, 7, 8, 10, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| Willner | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |

396

| Prior Art | Claims | Anticipation/Obviousness |
|---|---|---|
| Willner/Novoselsky | 10 | Obviousness (under SunStone's interpretation of the claims) |
| Willner/Song | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| Willner/Ramabadran | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| WebBiometrics | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| WebBiometrics/Novoselsky | 10 | Obviousness (under SunStone's interpretation of the claims) |
| WebBiometrics/Song | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |
| WebBiometrics/Ramabadran | 1, 2, 4, 7, 8, 17, 18, 39, 43 | Obviousness (under SunStone's interpretation of the claims) |

Ex. A, Striegel Rep. at Summary of Opinions ¶¶ 1390-91.

Dr. Striegel treated the '682 Patent in the same manner: four out of the eight references/combinations asserted by Dr. Striegel are offered pursuant to the "under SunStone's interpretation of the claims" approach. Ex. A at ¶1391.

The body of the Invalidity Report provides further evidence that Dr. Striegel's opinions for these "SunStone's interpretation" references are based improperly on undisclosed claim constructions rather than on the Court's claim constructions. Paragraphs 480-83 of Dr. Striegel's report are representative:

480.    Under SunStone's interpretation of the claims, in which the behavioral biometrics feature in IBM's Pinpoint Detect product allegedly infringes, Willner anticipates the claims.   In my opinion, as will be explained in my rebuttal report, the claims do not read on biometrics functionality, for at least the reason that no prediction is made based on "the selected transactional information" or based on "how the client device is configured to render the transactional information specified by the presentation information."

481.    First, under SunStone's interpretation of the claims, Willner teaches determining a prediction based on the selected transactional information.   Willner teaches that its software "track[s] the movement of a cursor from a first position 210 along a path 211 to a second position 212 on an advertisement 214." Willner at [0046]. Willner therefore determines a prediction based on the selected advertisement.

482.    Second, under SunStone's interpretation of the claims, Willner teaches determining a prediction based on how the client device is configured to render the transactional information specified by the presentation information. Willner teaches that its software "track[s] the movement of a cursor from a first position 210 along a path 211 to a second position 212 on an advertisement 214." Willner at [0046].   Willner therefore determines a prediction based on how the advertisement is rendered according to the presentation information.

483.    Third, under SunStone's interpretation of the claims, Willner teaches determining a prediction based on predicted response information associated with the transactional information that is expected to be provided by a user of the client device.   Willner teaches analyzing mouse movement to determine if a mouse movement is cursor-like.   Id. at [0046]-[0048].   This is illustrated in Figures 2 and 3:

Dr. Striegel provides no definition or explanation as to what "SunStone's interpretation of the claims" means and, more importantly, Dr. Striegel provides no analysis for this limitation under

the Court's construction. The Court construed the term "predicted response information associated with the transactional information that is expected to be provided by a user of the client device" to have its plain and ordinary meaning. (Dkt. 32 at 1.) Dr. Striegel ignores this construction and instead applies his interpretation of what he calls SunStones's interpretation of the claims. There is no evidence or indication that Dr. Striegel's opinion of "SunStone's interpretation" comports with the Court's claim construction for this term.  Indeed, when asked during his deposition what SunStone's interpretation of the claims actually is, Dr. Striegel could point to no specific examples and only vaguely alluded that "I believe I referenced the materials that I had reviewed for the case. And those provided SunStone's interpretation of the claims."  Ex. B, Striegel Dep. at 209:25-210:10. It is worth noting that Dr. Striegel's list of materials considered is nearly five pages long and identifies, literally, thousands of pages. Ex. C, Exhibit 2 to Striegel Invalidity Report.  This cannot fairly be said to provide disclosure of Dr. Striegel's opinion as to what he considers to be "SunStone's interpretation of the claims" as is required the Federal Rules of Civil Procedure and *Daubert*.

There is no dispute that Dr. Striegel failed to apply the Court's claim construction for the portions of his report analyzing the claims under "SunStone's interpretation of the claims."  For example, when asked why he didn't apply the Court's construction to Claim Element 1G(d), Dr. Striegel replied: "So I applied this interpretation of this because in part, SunStone's interpretation is differing from the plain and ordinary meaning on that."  *Id*. at 207:3-15.  The portions of Dr. Striegel's report that analyze the claims under "SunStone's interpretation of the claims" fail to apply the Court's constructions, fail to define what "SunStone's interpretation of the claims" actually is, and fail to compare SunStone's supposedly contrary interpretations to the Court's

constructions.  As a result, these opinions, which do not apply the Court's claim construction will not be helpful to the jury and, instead, will only serve to confuse the jury and should be stricken.[1]

**B.  Dr. Striegel's Invalidity Opinions Premised On "Sunstone's Interpretation Of The Claims" Should Be Excluded As Inconsistent With The Plain And Ordinary Meaning Of The Claims**

A fundamental tenet of patent law is that the plain and ordinary meaning applies unless the inventor has defined the term or if there has been a clear and unmistakable disavowal of scope – neither of which has occurred nor been asserted by Dr. Striegel. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*). As such, for terms not construed by the Court, Dr. Striegel was bound to apply the plain and ordinary meaning to a POSA of the asserted claims. *Whirlpool Corp. v. TST Water, LLC*, 2018 WL 1536875, at *3 (E.D. Tex. Mar. 29, 2018) (concluding that terms not construed during the *Markman* process should go to the jury to be given their plain and ordinary meaning as understood by a person of ordinary skill in the art).  As noted above, rather than doing this, Dr. Striegel used his self-determined, but undisclosed, "SunStone's interpretation of the claims." There is no question that Dr. Striegel, for the portions of his report that find invalidity based "on SunStone's interpretation of the claims," has done just that.  By way of example, when asked with respect to the Willner reference if there was anywhere for Element 1G(d) of the '870 Patent that he considered the element under the plain and ordinary meaning as understood by a POSA rather than "SunStone's interpretation," Dr. Striegel answered "I believe in the report here – and this is 190, 191, 192 and 193 – for 1d that I do examine it ***under SunStone's interpretation of the claims.***"  Ex. B, Striegel Dep. at 206:5-14 (emphasis added).  There is no evidence or indication that Dr. Striegel, when applying "SunStone's interpretation of the claims," was applying the plain and ordinary meaning of the relevant claim terms and limitations.  As such,

---

[1] *See* Ex. A at ¶¶467-551, 564-576, 589-732, 1039-1192, and 1195-1357.

his opinions based on SunStone's interpretation violate a basic tenet of patent law and are unreliable under *Daubert*.[2]

### C.    Dr. Striegel's Opinions That The Asserted Patents Do Not Meet The Written Description And Enablement Standards Are Unreliable And Should Be Stricken

Dr. Striegel's opinions of whether the Asserted Patents meet the written description and enablement requirements should also be stricken because, once again, Dr. Striegel focuses on SunStone's interpretation of the patents rather than the Court's constructions or the plain and ordinary meanings a POSA would understand: "In my opinion the asserted claims are invalid for lack of written description and lack of enablement if broad enough to support Plaintiff's infringement allegations[.]" Ex. A, Invalidity Report at ¶ 1358. However, that is not the standard for either written description or enablement.

The relevant inquiry for whether the enablement requirement is met is whether the specification describes how to practice the invention without undue or unreasonable experimentation. *Minerals Separation Ltd. v. Hyde*, 242 U.S. 261, 270 (1916). It is not, as Dr. Striegel implies, whether the specification describes how to implement the accused features. ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ While the claims may encompass aspects of those "features" as implemented by IBM – leading to a finding of infringement – there is no requirement that the patents "enable" the entirety of those features.  The inquiry for enablement is not focused on the defendant's product and its implementation but is focused on "the invention."  *McRO, Inc. v. Bandai Namco Games America Inc*., 959 F. 3d 1091, 1100 (Fed. Cir. 2020) ("This statutory requirement is limited to what is claimed. Section 112

---

[2] *See* Ex. A at ¶¶467-551, 564-576, 589-732, 1039-1192, and 1195-1357.

requires enablement of 'only the claimed invention,' not matter outside the claims.") (citations omitted). Thus, Dr. Striegel's efforts to disparage the patents by pointing out that the terms biometrics, pattern, and outlier are not in the Asserted Patents (Invalidity Report at ¶¶ 1360, 1366) should be stricken and excluded as not relevant to any inquiry in this case, and especially not relevant to enablement.

In similar fashion to enablement, the relevant inquiry for written description focuses on the language of the patent, not external products.  *Alcon Research Ltd.,* 745 F.3d at 1191-92.  In particular, the inquiry is whether the patent specification describes the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention. *Moba, B.V.*, 325 F.3d at 1319; *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). The inquiry is not – as Dr. Striegel implies – whether the inventor had possession of the accused product or the accused feature. ████████████████████████████

████████████████████████████████████

████████████████████████████████ *Tyco Healthcare Grp. LP v. Biolitec, Inc*., No. C-08-3129 MMC, 2010 WL 3059694, at *3 (N.D. Cal. Aug. 3, 2010) ("for purposes of the written description requirement, the issue is not whether a specification provides an adequate description of the accused product, but, rather, whether the specification provides an adequate description of the claimed invention."); *see also Inline Connection Corp. v. Earthlink, Inc*., 684 F.Supp.2d 496, 528, 531 (D. Del. 2010) (holding "written description analysis examines whether the inventor possessed the claimed invention, not whether he possessed or invented the accused technology"; rejecting defendant's arguments that claims were invalid because specification did not "teach anything" about defendant's accused product.).  Dr. Striegel's analysis "merely revives [his] non-infringement argument in the cloak of a validity challenge."  *Moba, B.V.*, 325 F.3d at 1321

(affirming jury's finding that patent claiming method to lift eggs was not invalid for lack of an adequate written description).  Because Dr. Sriegel's opinions on written description are not tethered to the claimed invention and are, instead, tethered to IBM's implementation of accused features they should be stricken and excluded.

### D.      Dr. Striegel's Opinions Regarding Background Prior Art Are Irrelevant And Should Be Stricken

Dr. Striegel's Report describes a variety of prior art references "to provide a background for the state of the art at the time of the invention."  Ex. A, Striegel Rep. at ¶ 64. Yet, Dr. Striegel provides no invalidity analysis – neither anticipation nor obviousness – for these background references.  This can be seen by referring to the opinion summary charts found at pages 396-98 of the Invalidity Report, where none of them are mentioned. There is no dispute that Dr. Striegel did not provide an invalidity analysis, under either anticipation or obviousness, for the Montgomery, Lalonde, Chimento, Varghese, Mason, Maghoul, Stoutenburg, Klein, Pedone, Reumann, and Liem references.  Ex. B, Striegel Dep. at 186:1-193:20.   Further, IBM never provided invalidity contentions based on the Chimento, Varghese, Mason, Maghoul, Stoutenburg, Klein, Pedone, Reumann, and Liem references.

Allowing IBM, through Dr. Striegel or otherwise, to present evidence from any one of eleven, un-asserted, uncharted and previously undisclosed (for invalidity purposes) prior art references would be unfairly prejudicial and will merely serve to confuse the jury. Moreover, allowing any opinion that any of these references disclose one or more limitations of the Asserted Patents would be unfair given there has been no invalidity analysis provided for theses references. As a result, the Court should strike Dr. Striegel's opinions as to these references under its gatekeeping function.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves the Court to strike portions of Dr.

Aaron Striegel's Expert Reports on Invalidity for the reasons stated herein.


Dated: March 25, 2022                              Respectfully submitted,

                                                  DICKINSON WRIGHT PLLC

                                        By:    /s/ Christopher E. Hanba                    .
                                               Christopher E. Hanba
                                               State Bar No. 24121391
                                               chanba@dickinson-wright.com
                                               Joshua G. Jones
                                               State Bar No. 24065517
                                               jjones@dickinson-wright.com
                                               DICKINSON WRIGHT PLLC
                                               607 W. 3rd Street, Suite 2500
                                               Austin, Texas 78701
                                               Telephone: (512) 770.4200
                                               Facsimile: (844) 670.6009

                                               Ariana D. Pellegrino
                                               State Bar No. P79104 (pro hac vice)
                                               APellegrino@dickinsonwright.com
                                               Zachary Pelton
                                               State Bar No. P85197 (pro hac vice)
                                               zpelton@dickinsonwright.com
                                               DICKINSON WRIGHT PLLC
                                               500 Woodward Avenue, Suite 4000
                                               Detroit, MI 48226
                                               Telephone: (313) 223-3684
                                               Facsimile: (844) 670-6009

                                               Caleb L. Green
                                               State Bar No. 15234 (pro hac vice)
                                               DICKINSON WRIGHT PLLC
                                               3883 Howard Hughes Pkwy. Suite 800
                                               Las Vegas, NV 89169
                                               Telephone: (702) 550-4400
                                               Facsimile: (844) 670-6009
                                               cgreen@dickinsonwright.com

                                               Kevin Sean Kudlac, Esq.

State Bar No. 00790089
kevin@kudlacip.com
KUDLAC PLLC
1916 Wimberly Lane
Austin, Texas 78735
Telephone: (512) 656-5743

*Attorneys for Plaintiff SunStone Information
Defense, Inc.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on March 24, 2022, I emailed Defendant's counsel as to whether they were opposed to the above motion.  The Parties' exchanged emails on March 24, 2022.  Defendant stated that it would oppose the motion.

*/s/ Christopher E. Hanba*
Christopher E. Hanba

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2022, I electronically served the foregoing document *via* electronic mail to all counsel of record.

*/s/ Christopher E. Hanba*
Christopher E. Hanba
